■ In the Matter of SHERYL COOPER, Appellant, v SOLOMON KAPLAN et al., Respondents.—Order of the Supreme Court, New York County (Helen E. Freedman, J.), entered on or about April 12, 1989, which granted defendant's motion for summary judgment dismissing the complaint, affirmed, without costs.

In this medical malpractice action, plaintiff seeks to avoid the 2½-year Statute of Limitations period (CPLR 214-a) by invoking the doctrine of continuous treatment. *(See, Borgia v City of New York,* 12 NY2d 151 [1962].) The doctrine of continuous treatment, however, is inapplicable to toll the Statute of Limitations in this case.

Defendant, a physician, prescribed Ortho-Novum 135 birth control pills for plaintiff in or around May 1985. The only other contact alleged was two telephone calls in August of that year. Plaintiff discontinued her use of the pills on or about October 14, 1985, after discovering a blood clot in her

lung. Plaintiff contends that the clot was caused by her use of the medication prescribed by defendant. Plaintiff, however, made no attempt to commence this action, by filing a summons with notice with the New York County Clerk, until on or about April 13, 1988.

The continuous treatment doctrine was intended to avoid the harsh consequences of the Statute of Limitations in situations where a patient, in order to meet the limitations period, would be required to "interrupt corrective efforts by serving a summons". *(Borgia v City of New York, supra,* at 156.) The doctrine of continuous treatment was not intended to cover a "mere continuity of a general physician-patient relationship" *(supra,* at 157) and should not be applied to the facts of this case, where plaintiff was aware of the injury and of the possible link between the injury and the use of the pills within the limitations period, and the only reason offered for extending the period of limitations is an outstanding prescription for the drug, with no evidence of an appointment for future treatment. *(Cf., Parrott v Rand,* 126 AD2d 621, *lv denied* 69 NY2d 611; *Richardson v Orentreich,* 97 AD2d 9 [1st Dept 1983], *affd* 64 NY2d 896.) Concur—Murphy, P. J., Sullivan and Rubin, JJ.

Carro and Milonas, JJ., dissent in a memorandum by Milonas, J., as follows: In my opinion, the order being appealed herein should be reversed and the complaint reinstated.

Plaintiff commenced this medical malpractice action for damages for personal injuries allegedly sustained by her as a result of medication prescribed by defendant physician, Dr. Solomon Kaplan. In that regard, plaintiff alleges that on May 7, 1985, when she visited Dr. Kaplan for treatment, they discussed birth control at which time she informed defendant that she had previously taken a drug known as Ortho-Novum 135 which had caused serious side effects. However, defendant purportedly stated that she should have no problem with this medicine and supplied her with a six-month prescription. Thereafter, she contacted Dr. Kaplan by telephone on at least two occasions, the last occasion is conceded by defendant to have been on August 14, 1985. According to plaintiff, the purpose of her calls to him was to complain of pain in her right leg which she believed may have been due to the birth control pills which she was ingesting. Upon advice of Dr. Kaplan, she continued taking the medication. Yet, during a trip to England, plaintiff began to suffer severe pain in her right side along with extreme difficulty in breathing. She was admitted to a hospital where she was diagnosed as having

pulmonary embolism in her right lung supposedly attributable to the birth control pills. The date of her injury was October 14, 1985.

The instant lawsuit was commenced on April 13, 1988, one day prior to the expiration of the applicable 2½-year Statute of Limitations (CPLR 214-a), by filing a summons with notice upon the New York County Clerk pursuant to CPLR 203 (b) (5). Personal service upon defendant was purportedly effected on May 17, 1988. Although defendant disputes the validity of the service, this issue is not before us on appeal since the only matter involved herein is the timeliness of the underlying action. In any event, defendant contends, and the majority agree, that October 14, 1985, the day that plaintiff was afflicted with a blood clot, is not the operative date to compute the beginning of the limitations period. The reason for this is that plaintiff was treated by defendant on May 7, 1985, that she was cognizant all along about the relationship between the use of birth control pills and its possible side effects and that, therefore, having no future scheduled appointment with Dr. Kaplan, she should not receive the benefit of the continuous treatment doctrine.

A cause of action for malpractice in New York State generally accrues at the time of the commission of the alleged malpractice (*Davis v City of New York,* 38 NY2d 257). The exception to this rule occurs where a foreign body is negligently left in the patient's body, in which case the Statute of Limitations does not start to run until the malpractice can reasonably be discovered (*Flanagan v Mount Eden Gen. Hosp.,* 24 NY2d 427), or where there has been a continuous course of treatment, and the limitations period does not commence until the treatment ends (*Borgia v City of New York,* 12 NY2d 151; *see also, Coyne v Bersani,* 61 NY2d 939; *Greene v Greene,* 56 NY2d 86). While there is some indication that the Statute of Limitations may be extended under the continuous treatment doctrine in a situation in which a person continues to take medication under the doctor's original prescription (*see, Parrott v Rand,* 126 AD2d 621, *lv denied* 69 NY2d 611; *Bikowicz v Nedco Pharmacy,* 114 AD2d 708; *Bernardo v Ayerest Labs.,* 99 AD2d 430; *Manno v Levi,* 94 AD2d 556, *affd* 62 NY2d 888), none of the foregoing cases is precisely on point, and, indeed, it appears that there is no authority for a fact pattern similar to the present one. Certainly, the " 'continuing trust and confidence' which underlies the 'continuous treatment doctrine' * * * does not necessarily come to an end upon a patient's last personal visit with his or her physician * * *

when further treatment is explicitly anticipated by both physician and patient as manifested in the form of a regularly scheduled appointment for the near future, agreed upon during the last visit, in conformance with the periodic appointments which characterized the treatment in the immediate past. * * * Thus, a patient remains under the 'continuous treatment or care' of a physician between the time of the last visit and the next scheduled one where the latter's purpose is to administer ongoing corrective efforts for the same or a related condition" *(Richardson v Orentreich,* 64 NY2d 896, 898-899; *see also, Waite v Abraham,* 104 AD2d 97).

Plaintiff does not claim that she had another appointment with Dr. Kaplan, but, nonetheless, she was ingesting birth control pills in accordance with his six-month prescription when she suffered the subject blood clot and had, moreover, telephoned him at least twice, purportedly with respect to problems associated with taking this medication. In addition, plaintiff asserts that she consulted Dr. Kaplan after her long-time physician had retired and gave him all of her medical records, along with an oral account of her medical history, thereby demonstrating an intent to utilize his services in the future. Consequently, what is involved here is not merely a few isolated telephone calls *(see, Davis v City of New York, supra)* with no evidence of any interest in seeking out Dr. Kaplan in the future, as defendant urges, but a clear indication that plaintiff may have transferred her patronage from her former, now retired, physician to Dr. Kaplan, that she was following his medical advice and expected to visit him in the future. Under these circumstances, there is at least a question of fact as to whether the continuous treatment doctrine applies such as would preclude summary judgment.