■ ADRIAN MARUN, as Administrator of the Estate of NELSON MARUN, Deceased, Respondent, v NORMAN COLEBURN, M.D., et al., Appellants. [739 NYS2d 22] —Order, Supreme Court, New York County (Karla Moskowitz, J.), entered March 29, 2001, which denied defendants' motion for summary judgment dismissing the action as time-barred, and which denied plaintiff's cross motion to dismiss the statute of limitations defense, unanimously modified, on the law, to the extent of granting the cross motion and dismissing the defense predicated on CPLR 214-a and, except as so modified, affirmed, without costs.

In 1994, plaintiff's decedent received treatment at defendant New York Medical Group for urinary tract complaints, including urethral discharge, pain upon urination and blood in the urine. He was eventually referred to defendant Norman Coleburn, M.D., a urologist. Urinalysis confirmed pyuria or the presence of pus. During an office visit on January 18, 1995, plaintiff's decedent again complained of discomfort during urination and the presence of blood. Notwithstanding decedent's history, Dr. Coleburn failed to perform either a physical examination or a cystoscopy, believing that decedent suffered from either chronic prostatitis or prostatodynia, both benign conditions.

Despite a direction to return to the office in a month for a repeat urinalysis, the medical group did not follow up, and decedent was not seen again by the practice until November 20, 1995. At that time, he made no complaints of urological problems and was seen by defendant Ina Itzkovitz, M.D., an internist. He was again seen by Dr. Itzkovitz on January 17, 1996 and on October 16, 1996. On the latter visit, a routine urinalysis revealed hematuria (blood in the urine), and decedent was advised by letter to return for further tests. When seen on November 1, 1996, complaining of blood and pain during urination, Dr. Itzkovitz prescribed medication and recommended a repeat urinalysis, an abdominal sonogram, and a barium enema. The sonogram, performed on December 2, 1996, and the barium enema, performed on January 10, 1997, both yielded normal results.

Decedent returned to defendant medical group on January 30, 1997, complaining of pain when urinating and blood in the urine and stool. He was seen the following day by Dr. Coleburn, who prescribed medication and referred decedent for a cystoscopy, although not on a priority basis. Decedent was diagnosed as suffering from terminal hematuria (i.e., bleeding) and prostatodynia (prostate pain). A cystoscopy was scheduled for

March 6, 1997 and then for March 10, 1997, which appointments decedent canceled for reasons not known. Significantly, the record contains no indication that he was ever warned of the urgency of this procedure.

Notes made by Dr. Coleburn during an office visit of July 28, 1997 first indicate the need to rule out cancer. An emergency cystoscopy was conducted at that time, and a later cystoscopy conducted at St. Luke's-Roosevelt Hospital confirmed cancer. Decedent was diagnosed with "an invasive urethral carcinoma involving almost his entire penis." The condition was subsequently found to be inoperable. Chemotherapy and radiation treatment were ineffectual as the cancer had already spread to decedent's lymph nodes, lungs, and pelvis. He died on September 18, 1998.

It is clear that decedent received treatment at defendant medical group for a urological condition from his first complaints during April 1994 until the eventual diagnosis of cancer in July 1997. By the time he was seen by defendant urologist in January 1995, decedent had amassed a medical record that indicated difficulty and pain on urination, "supra-pubic tenderness," pyuria, hematuria, urethral discharge while voiding and a thrombosed blood vessel in the penis. Thus, by January 1995, there was an established course of treatment specifically directed at decedent's urological complaints (*cf., Young v New York City Health & Hosps. Corp.*, 91 NY2d 291; *Nykorchuck v Henriques,* 78 NY2d 255). It is clear that decedent was seen on a regular basis as a patient at the medical group and, while the record reflects a lapse in treatment for urological complaints between January 1995 and October 1996, it likewise reflects a failure to follow up the January 1995 test results by defendant Dr. Coleburn.

The possibility of urethral cancer was indicated by the symptoms that the decedent initially presented and that defendants attempted to treat. Contrary to defendants' intimation, their failure to initially diagnose cancer does not mandate the conclusion, for the purposes of continuity, that they made no attempt to provide treatment for decedent's urological complaints (*see, Hill v Manhattan W. Med. Group-H.I.P.*, 242 AD2d 255; *Williams v Health Ins. Plan,* 220 AD2d 343; *Dellert v Kramer*, 280 AD2d 438). In addition, the 22-month period during which the decedent apparently presented with complaints unrelated to his urological condition, resulting in a two-year hiatus in decedent's visits to defendant urologist, does not preclude continuous treatment. As we stated in *Hill v Manhattan W. Med. Group-H.I.P.* (*supra* at 255-256): "the fact that

plaintiff's decedent also visited defendants from time to time complaining of other symptoms that were clearly unrelated to * * * cancer is not a reason to find that there was no course of treatment for the cancer. Since defendants were plaintiff's decedent's regular doctors, it would be surprising if he did not also visit them for other unrelated ailments during the course of his cancer." Concur—Rosenberger, J.P., Ellerin, Wallach, Rubin and Marlow, JJ.