[753 NYS2d 71]

Jeffrey S. Hein, Appellant, v Cornwall Hospital et al.,
Respondents, et al., Defendant.

First Department, January 9, 2003

## APPEARANCES OF COUNSEL

*Joseph J. Pierini* for appellant.

*David A. Shimkin* of counsel, New York City (*Erik Kapner* on the brief; *Martin Clearwater & Bell,* attorneys), for respondents.

*Catherine R. Richter* of counsel (*Kopff, Nardelli & Dopf LLP*, attorneys), for defendant.

## OPINION OF THE COURT

SULLIVAN, J.

In this medical malpractice action commenced on January 22, 1999, based on, inter alia, the failure to diagnose and treat timely an obstruction of the bowel, resulting in various corrective surgeries and gastrointestinal injuries, as well as extensive loss of the bowel, plaintiff charges defendants with malpractice committed on July 17, 1996, July 20, 1996, July 20 through July 24, 1996 and July 29, 1996. At issue is the viability of any claim for malpractice committed prior to July 20, 1996, which is, on its face, outside the 2½ year statute of limitations (*see* CPLR 214-a). Rejecting plaintiff's continuous treatment argument, Supreme Court dismissed any such claim as time barred.

On July 16, 1996, at 5:00 A.M., three weeks after his discharge from Memorial Sloan-Kettering Hospital, where he had been treated for testicular cancer over a four-month period in 1996, necessitating two surgical procedures and chemotherapy, plaintiff, then 21 years of age, arrived at the emergency room of defendant Cornwall Hospital, complaining of nausea, vomiting and back and abdominal pain. Doctors Resch, also a defendant herein, and Madell examined him and prescribed various medications, including Toradol to relieve his pain and Zantac to neutralize any stomach acid. Dr. Resch ordered a blood workup, a chest X ray and a scan of the spleen. Plaintiff was discharged six hours later without a diagnosis. In the emergency room discharge notice plaintiff was instructed that in the event of a change in condition he was to notify his physician immediately and, in the event he was unable to contact him or her, to call or return to the emergency room.

According to the emergency room record, plaintiff returned to the emergency room at 11:34 P.M. that same day and was seen by Dr. Resch at 12:30 A.M. Dr. Resch prescribed morphine for his pain and conducted urine and blood analyses, which, except for slightly lowered potassium levels, revealed no significant abnormalities. Dr. Resch discharged plaintiff at 4:00 A.M.

the next morning, instructing him, as before, to return to the emergency room only if necessary. Later that day, on a referral from his primary care physician, Dr. Wilder, plaintiff saw Dr. Muslim, a gastroenterologist, also a defendant herein, who examined him and arrived at a diagnosis of gastritis brought on by steroids. Dr. Muslim reviewed and confirmed plaintiff's medication regime.

Three days later, on July 20, 1996, plaintiff again experienced abdominal pain and returned to the emergency room at 5:30 A.M., where he was seen by Dr. Resch as well as Dr. Muslim. Plaintiff was given pain medication and discharged when the source of his pain could not be diagnosed. He was again instructed to notify his private physician immediately if he had a change in condition. Later that same day, at the insistence of his father, plaintiff was admitted by Dr. Muslim with a differential diagnosis of "drug dependence versus para neoplastic syndrome; neuropathy secondary to chemotherapy; anxiety secondary to neoplasm; infectious mononucleosis; viral syndrome; gastritis; etc." Plaintiff was discharged on July 24, 1996 with a diagnosis of "abdominal pain, probably visceral from infectious mono, infection of the capsule of the spleen * * * paraneoplastic syndrome, Candida esophagitis, depression," and referred to Dr. Wilder, his primary care physician, and the doctors at Sloan-Kettering. Dr. Muslim noted that he discussed with plaintiff and his family "regarding the lack of the objective findings and disproportionate subjective pain and discomfort." This discussion followed an in-patient referral to Dr. Prabhu, a psychiatrist, who found plaintiff to be "obsessed with his physical condition" and diagnosed him as suffering from a "depressive disorder [secondary] to physical condition."

Plaintiff returned to the emergency room at Cornwall Hospital on July 29, 1996 with the same complaints and was examined by Dr. Resch. Again, a diagnosis could not be made as to the source of his pain. He was referred to Sloan-Kettering, where he was admitted that same day. The next day, July 30, 1996, plaintiff underwent bowel resection at Sloan-Kettering due to a small bowel obstruction and extensive small bowel necrosis/infarction. He later underwent five abdominal surgical procedures, including two laparotomies for treatment of abdominal infections and abscesses.

After joinder of issue, defendants moved for partial summary judgment as to any claim for injuries alleged to have been the result of acts and/or omissions which occurred prior to plaintiff's July 20, 1996 admission to Cornwall Hospital as

barred by CPLR 214-a's 2½ year statute of limitations (CPLR 214-a). In opposition, plaintiff argued the toll of continuous treatment and cross-moved to strike defendants' statute of limitations defense on that ground. Supreme Court rejected plaintiff's continuous treatment argument and granted defendants' motion, relying on language in *Nykorchuck v Henriques* (78 NY2d 255, 259) to the effect that the failure to establish a course of treatment is not a course of treatment and holding that "[n]owhere in the portions of the submitted deposition testimon[y] or in the medical records is there evidence that a plan of treatment was discussed or made." The court noted the absence of the anticipation by both patient and physician of further treatment as manifested by an agreement as to a regularly scheduled appointment in the near future. As noted, the court dismissed any claims based on malpractice that took place prior to July 20, 1996 and denied plaintiff's cross motion. We reverse.

CPLR 214-a, in pertinent part, provides, "An action for medical * * * malpractice must be commenced within two years and six months of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure." Under the continuous treatment doctrine, the statute is tolled until after the plaintiff's last treatment, " 'when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint' " (*McDermott v Torre*, 56 NY2d 399, 405, quoting *Borgia v City of New York*, 12 NY2d 151, 155). Thus, the question for resolution is whether plaintiff's emergency room and office visits of July 16 and July 17, 1996 were part of a course of treatment that may be said to have run continuously.

Supreme Court, in its analysis, quoted *Nykorchuck v Henriques* (78 NY2d, *supra* at 259), "While the failure to treat a condition may well be negligent, we cannot accept the self-contradictory proposition that the failure to establish a course of treatment is a course of treatment." In the circumstances of this case, this statement is capable of being misleading. As this Court noted in *Williams v Health Ins. Plan of Greater N.Y.* (220 AD2d 343, 343), a case involving a failure to diagnose, "The relevant issue in such a case is not whether there has been a diagnosis, but whether the ongoing treatment is related to the * * * condition that gave rise to the lawsuit" (citations omitted). Throughout the period of July 16, 1996 and through

plaintiff's admission to Cornwall Hospital, including the emergency room visits and the office visit to Dr. Muslim, the medical intervention was always for the same reason: plaintiff's severe abdominal pain. The intervention geared to that condition—the repeated administration of medication and testing undertaken to treat and diagnose that symptom—is indeed a course of professional activity deserving of the application of the doctrine of continuous treatment.

This Court has repeatedly ruled that the failure to make the correct diagnosis as to the underlying condition while continuing to treat the symptoms does not mean, for purposes of continuity, that there has not been treatment (see Dellert v Kramer, 280 AD2d 438; Marun v Coleburn, 291 AD2d 340, 341; Bonanza v Raj, 280 AD2d 948 [4th Dept]; Green v Varnum, 273 AD2d 906 [4th Dept]). "The fact that the defendants did not initially diagnose plaintiff's [condition] does not detract from the conclusion that defendants treated plaintiff continuously over the relevant time period for symptoms ultimately traceable to the * * * condition whose alleged misdiagnosis and alleged mistreatment have given rise to this action." (Dellert at 439.) As this Court noted in Hill v Manhattan W. Med. Group-H.I.P. (242 AD2d 255, 255), "Merely because defendants did not diagnose plaintiff's decedent's condition as cancer is not a basis to find that they were not treating him for it if his symptoms were such as to indicate its existence and they nevertheless failed to properly diagnose it."

The medical records in the instant case speak for themselves. They clearly indicate that each of plaintiff's repeated visits— all for abdominal pain, nausea, vomiting and back pain—was for "the same illness, injury or condition" that CPLR 214-a uses as the frame of reference when it specifies the "last treatment" as the accrual date where there is continuous treatment.

Nor, on each occasion that plaintiff sought medical assistance, was it for an examination "undertaken at the request of the patient for the sole purpose of ascertaining the state of the patient's condition," which CPLR 214-a specifically excludes from the term "continuous treatment." Moreover, after the office visit of July 17, 1996 and again after seeing him in the emergency room on July 20, 1996, Dr. Muslim expected to continue to examine and treat plaintiff if the symptoms persisted. Indeed, on his discharge from the emergency room on July 20, 1996, Dr. Muslim instructed plaintiff to call him on "Monday." As the Court of Appeals has held, "[W]here the physician and patient reasonably intend the patient's uninter-

rupted reliance upon the physician's observation, directions, concern, and responsibility for overseeing the patient's progress, the requirement for continuous care and treatment for the purpose of the Statute of Limitations is certainly satisfied" (*Richardson v Orentreich*, 64 NY2d 896, 899).

Defendants' inability, notwithstanding their work-up and prescription of various medications for gastritis, pain, mononucleosis, viral syndrome and depression, to arrive at the correct diagnosis is the very nub of the malpractice claim against them. If the Legislature had intended to shield doctors from malpractice claims for their failure to diagnose and treat symptoms correctly it would not have used the word "omission" in CPLR 214-a. In this regard, the Court of Appeals has set the standard: "[N]either individuals suffering from chronic conditions, nor patients being 'monitored' for a specific medical condition to ensure that it improves or at least does not deteriorate (as opposed to a general physical examination), are necessarily outside the doctrine" (*Ganess v City of New York*, 85 NY2d 733, 736 [citation omitted]).

We have considered defendants' other arguments and find that they are without merit.

Accordingly, the order of the Supreme Court, New York County (Marilyn Shafer, J.), entered on or about March 12, 2002, which granted the motion by defendants Cornwall Hospital, Arif Muslim and Stuart Resch for partial summary judgment and denied plaintiff's cross motion to strike said defendants' affirmative defenses based on statute of limitations, should be reversed, on the law, without costs or disbursements, defendants' motion for partial summary judgment denied and plaintiff's cross motion to dismiss the affirmative defenses based on CPLR 214-a granted.

MAZZARELLI, J.P., BUCKLEY and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered on or about March 12, 2002, reversed, on the law, without costs or disbursements, defendants-respondents' motion for partial summary judgment denied and plaintiff's cross motion to dismiss the affirmative defenses based on CPLR 214-a granted.