■ MICHELE A. BLAIER, Appellant, v MARJORIE CRAMER, Respondent, et al., Defendant. [756 NYS2d 561] —Order, Supreme Court, New York County (Sheila Abdus-Salaam, J.), entered on or about October 18, 2001, which granted the motion of defendant Cramer for summary judgment dismissing the complaint against her, denied plaintiff's cross motion to strike Dr. Cramer's first, tenth and eleventh affirmative defenses, and granted plaintiff's cross motion for leave to amend the complaint to add Marjorie Cramer, M.D., P.C. as a defendant only with regard to the claim for malpractice as to the right lateral thigh, unanimously modified, on the law, so as to deny the motion for summary judgment, grant plaintiff's cross motion to strike the first and eleventh affirmative defenses, and grant the cross motion for leave to amend in its entirety, and as so modified, affirmed, without costs.

In this medical malpractice action, commenced on May 28, 1999, plaintiff complained of injuries sustained as a result of breast augmentation and liposuction procedures. We conclude that the motion court erred in rejecting, as a matter of law, plaintiff's continuous treatment claim and dismissing the complaint as against defendant Cramer on statute of limitations grounds; the issue of whether the continuous treatment doctrine applies here should have been left to the finder of fact.

The two years and six months statute of limitations for claims of medical malpractice (CPLR 214-a) is tolled until after a plaintiff's last treatment "when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint" (*McDermott v Torre*, 56 NY2d 399, 405 [1982], quoting *Borgia v City of New York*, 12 NY2d 151, 155 [1962]). Plaintiff's evidence establishes a sufficient basis for invoking the continuous treatment doctrine. She asserts that at her first consultation with Dr. Marjorie Cramer at the Cramer Center for Plastic

Surgery on July 19, 1994, she inquired about the prospect of cosmetic surgery to her abdomen, thighs and breasts. At this point, a course of treatment was planned, to occur in stages over a period of time. The process began with liposuction to the thighs, then proceeded to breast augmentation. Thereafter, additional procedures were undertaken to correct irregularities in the thighs resulting from the original liposuction. When Dr. Cramer herself stopped performing surgery in 1997, her partner at the Cramer Center for Plastic Surgery, Dr. Mark Filstein, undertook the work, with Dr. Cramer's continued presence, consultation, supervision and participation. ·

The continuous treatment doctrine may be invoked where there was "further treatment * * * anticipated by both physician and patient as manifested in the form of a regularly scheduled appointment for the near future, agreed upon during th[e] last visit, in conformance with the periodic appointments which characterized the treatment in the immediate past" (*Richardson v Orentreich*, 64 NY2d 896, 898-899 [1985]). Plaintiff's assertions support a conclusion that plaintiff did not merely undergo separate and discrete procedures, but rather, different parts of a larger plan for an array of procedures. She repeatedly returned for aftercare, corrections and further procedures contemplated by their original plan. Her claims support application of the doctrine because "a patient remains under the 'continuous treatment or care' of a physician between the time of the last visit and the next scheduled one where the latter's purpose is to administer ongoing corrective efforts for the same or a related condition" (*Matter of Cooper v Kaplan*, 163 AD2d 215, 218 [1990] [*affd* 78 NY2d 1103 (1991)], quoting *Richardson v Orentreich*, 64 NY2d 896, 899 [1985]).

Even absent a specifically scheduled appointment after June 18, 1996, the prior surgeries demonstrate a custom and practice between the parties, evidencing plaintiff's intent to undergo, one by one, the four procedures originally discussed with Dr. Cramer. In fact, plaintiff's telephone call to Dr. Cramer, one week after their June 18, 1996 discussion regarding future revisions, supports plaintiff's position that the discussed further corrective surgery was intended, if not yet actually scheduled. Dr. Cramer's dispute of plaintiff's assertion that, during the June 25, 1996 telephone call, the parties mutually agreed to postpone the further corrective surgeries due to plaintiff's pregnancy, at best merely creates a question of fact as to the existence of continuous treatment.

Furthermore, plaintiff's return to Dr. Cramer's office in May 1997, after delivery of her fifth child, further supports plaintiff's

position that "further treatment [was] explicitly anticipated by both physician and patient" (*Richardson v Orentreich, supra* at 898), inasmuch as it "indicat[es] that the physician and patient contemplated the patient's uninterrupted reliance on the physician's observation, directions, concern and responsibility of overseeing the patient's progress" (*Newman v Orentreich*, 169 AD2d 546, 546 [1991], *lv denied* 78 NY2d 857 [1991], *cert denied* 504 US 917 [1992]).

The continuing treatment may be provided by another practitioner who is acting as an agent of the first (*see Meath v Mishrick*, 68 NY2d 992 [1986]; *McDermott v Torre*, 56 NY2d 399, 403 [1982]). Plaintiff's assertions permit the inference that plaintiff's ongoing treatment, even when performed by Dr. Filstein, was attributable to both doctors and the professional corporation, in that at that time they were acting as agents of each other and of the professional corporation. The motion court erred in characterizing the relationship of the defendant doctors as mere "co-employees" of a professional corporation, when they were its only shareholders and key operating personnel. The relied-upon case of *Engelbart v Schachter* (235 AD2d 387, 388 [1997]) is inapposite.

Nor does application of the continuing treatment doctrine require that the alleged acts of malpractice must have run continuously; it is sufficient if the ongoing care *includes* wrongful acts (*see Borgia v City of New York*, 12 NY2d 151 [1962]).

Application of the "relation back" doctrine permits Marjorie Cramer, M.D., P.C. to be added as a defendant as to all the claims, rather than limiting the doctrine's application to the claim regarding Dr. Filstein's treatment of plaintiff's right lateral thigh (*see Cuello v Patel*, 257 AD2d 499 [1999]). Accordingly, leave to amend to add the professional corporation as a defendant should have been granted without limitation.

Inasmuch as the motion court correctly concluded that plaintiff's action against Dr. Cramer was timely served, pursuant to a prior order extending plaintiff's time to serve and file proof of service until December 29, 2000, plaintiff's cross motion to strike Dr. Cramer's first and eleventh affirmative defenses should have been granted. Concur—Saxe, J.P., Sullivan, Ellerin, Lerner and Gonzalez, JJ.