■ LISA O'DONNELL et al., Respondents, v HOWARD I. SIEGEL, M.D., et al., Appellants. [854 NYS2d 45]—

In November 1993, plaintiff's decedent, then 23 years of age, first presented to defendant, board-certified gastroenterologist Dr. Howard Siegel, with complaints of bloody stool, nausea, constipation and diarrhea. Dr. Siegel diagnosed the decedent as having esophageal-gastric reflux and hemorrhoids, prescribed hemorrhoidal cream and advised the decedent to increase his fiber and slow down when eating. The decedent was told to come back should his symptoms persist and no follow-up appointment was scheduled. On August 30, 1995, the decedent again visited Dr. Siegel, complaining of nausea and symptoms associated with acid reflux. An upper-GI endoscopy performed on the decedent revealed inflammation of the gastroesophageal junction, antral gastritis and no hiatal hernia, and an abdominal ultrasound and various other lab tests came back normal. The decedent was again prescribed hemorrhoidal and antireflux medication and told to come back if the symptoms persisted. On a visit on April 29, 1997, the decedent complained of similar

symptoms, and was again given prescriptions for the hemorrhoids and reflux and advised to come back if the symptoms persisted. On January 16, 1998, after presenting with mild rectal bleeding and symptoms associated with irritable bowel, Dr. Siegel scheduled the decedent for a colonoscopy, which, after being performed on January 23, 1998, revealed bleeding hemorrhoids, irritable bowel syndrome and possible colitis. Testing on blood and urine samples, however, indicated normal results. The decedent was prescribed over-the-counter medication and advised to return if the rectal bleeding returned. No appointment was scheduled.

On February 20, 2003, five years later, the decedent returned for his last visit, complaining again of rectal bleeding and symptoms associated with irritable bowel syndrome. Dr. Siegel again prescribed over-the-counter medicine and recommended a change in diet to a "healthy and high fiber" one. Also, he told the decedent to come back if the rectal bleeding persisted. In July 2003, the decedent was diagnosed with colon cancer. This action, alleging, inter alia, failure to diagnose and treat colon cancer, was commenced in June 2005.*

The motion court should have dismissed, as time-barred, all claims relating to care and treatment rendered by defendants from November 1993 to, and including, January 23, 1998. The statute of limitations for medical malpractice is $2^{1}/_{2}$ years from the act, omission or failure complained of, or the "last treatment where there is continuous treatment for the same illness . . . or condition" (CPLR 214-a). Sufficient facts having been shown that, calculated from the commencement of the action in June 2005, all but the final office visit on February 20, 2003 occurred outside the applicable $2^{1}/_{2}$-year statute of limitations period, plaintiff failed to raise a triable issue of fact as to whether the course of treatment, if such existed, had run continuously from November 1993 through February 20, 2003 so as to toll the running of the applicable statute of limitations (see McDermott v Torre, 56 NY2d 399 [1982]; Borgia v City of New York, 12 NY2d 151 [1962]).

The decedent's visits from 1993 through 2003 for similar complaints regarding the same area of the body, although arguably indicia of a "continuing general relationship with a physician, or routine, periodic health examinations[, do] not satisfy the doctrine's requirement of *continuous* treatment of the condi-

---

* After oral argument on the appeal, this Court was notified that the decedent had died and the cause of death was colon cancer. This decision follows the substitution order naming Lisa O'Donnell, the decedent's wife and the administrator of his estate, as plaintiff.

tion upon which the allegations of medical malpractice are predicated" (*Young v New York City Health & Hosps. Corp.*, 91 NY2d 291, 296 [1998] [internal quotation marks and citation omitted; emphasis added]). On this record, we find that during a nine-year period, Dr. Siegel, on five separate occasions, treated the decedent as he appeared. Dr. Siegel never discussed a "course of treatment" with the decedent other than prescribing mostly over-the-counter medication and advising the decedent to change his diet to include more fiber. Nor was there any evidence that "further treatment [was] explicitly anticipated by both physician and patient as manifested in the form of a regularly scheduled appointment for the near future, agreed upon during that last visit, in conformance with the periodic appointments which characterized the treatment in the immediate past" (*Richardson v Orentreich*, 64 NY2d 896, 898-899 [1985]). Even if the colonoscopy, performed in 1998, constituted a course of treatment, it was negative and the parties did not contemplate further treatment, as evidenced by the lack of instruction by Dr. Siegel that the decedent come back for a follow-up, plaintiff's opposition papers stating that the decedent "had no reason to think he should return to the doctor sooner than he did," and the decedent's deposition testimony that after the 1998 visit and procedure, there had been a resolution of the symptoms until the final visit in 2003.

Even in situations where further treatment is not contemplated, "[i]ncluded within the scope of 'continuous treatment' is a timely return visit instigated by the patient to complain about and seek treatment for a matter related to the initial treatment" (*McDermott*, 56 NY2d at 406). However, within this context, the decedent's return after a five-year period, during which time no treatment was rendered by Dr. Siegel, cannot be considered timely (*cf. Sinclair v Cahan*, 240 AD2d 152, 154 [1997] [a 28-month "chasm" between visits]). Nor do the policy reasons underlying the continuous treatment doctrine—that a patient should not be required to interrupt corrective medical treatment by a physician and undermine the continuing trust in the physician-patient relationship in order to ensure the timeliness of a medical malpractice action (*Rizk v Cohen*, 73 NY2d 98, 104 [1989]; *see also Young*, 91 NY2d at 296)—justify the invocation of the doctrine. Accordingly, we conclude that the decedent's return five years later was "a renewal, rather than a continuation, of the physician-patient relationship" (*Rizk*, 73 NY2d at 105; *see also Aulita v Chang*, 44 AD3d 1206, 1210 [2007]), and therefore, the continuous treatment doctrine may not be invoked by plaintiff (*McDermott*, 56 NY2d at 405; *Young*, 91 NY2d at 297). Concur—Tom, J.P., Williams, Malone and Kavanagh, JJ.

McGuire, J., concurs in a separate memorandum as follows: I agree with the majority that Supreme Court erred in denying defendants' motion for summary judgment dismissing most of the complaint as time-barred. I disagree with the majority's reasoning, however, and would rest reversal of the denial of the motion solely on the ground that plaintiffs failed to raise a triable issue of fact with respect to one element of the continuous treatment doctrine—the requirement that further treatment explicitly be anticipated by both physician and patient.

On November 23, 1993, Kenneth O'Donnell was examined by defendant Howard I. Siegel, M.D., a gastroenterologist. On that date, Mr. O'Donnell complained of rectal bleeding, blood in his stool, discomfort below his naval, gas, cramps, nausea, vomiting, tenesmus (i.e., "painful spasm of the urogenital diaphragm with an urgent desire to evacuate the bowel or bladder, involuntary straining, and the passage of little fecal matter or urine" [Stedman's Medical Dictionary 1945 (28th ed)]), constipation and diarrhea. Following the exam, Dr. Siegel, who noted that Mr. O'Donnell had no family history of colon cancer, diagnosed Mr. O'Donnell with esophageal-gastric reflux and hemorrhoids. Dr. Siegel prescribed hemorrhoidal cream and instructed Mr. O'Donnell to return to his office if the symptoms persisted.

On August 30, 1995, Mr. O'Donnell returned to Dr. Siegel's office, complaining of blood in his stool, constipation, nausea and acid reflux. In addition to ordering laboratory tests and an ultrasound of Mr. O'Donnell's abdomen, neither of which generated remarkable findings, Dr. Siegel performed an upper gastrointestinal endoscopy. The endoscopy revealed that Mr. O'Donnell suffered from an inflammation of the gastroesophageal junction and antral gastritis. Dr. Siegel prescribed medications for the hemorrhoids and esophageal-gastric reflux, and told Mr. O'Donnell to contact his office if the symptoms persisted.

On April 29, 1997, Mr. O'Donnell visited Dr. Siegel's office, complaining of blood in his stool and experiencing symptoms of irritable bowel syndrome. Dr. Siegel prescribed to Mr. O'Donnell hemorrhoidal cream and medication for irritable bowel syndrome, and told him to contact his office if the symptoms persisted.

Another visit by Mr. O'Donnell, who was experiencing mild rectal bleeding and symptoms of irritable bowel syndrome, to Dr. Siegel's office occurred on January 16, 1998. While laboratory tests on Mr. O'Donnell's blood and urine returned normal findings, a colonoscopy performed a week later revealed that Mr. O'Donnell was suffering from bleeding hemorrhoids, irrit-

able bowel syndrome and possibly colitis. Dr. Siegel again prescribed hemorrhoidal cream and medication for irritable bowel syndrome, as well as Preparation H and Imodium. Dr. Siegel repeated his prior instruction to Mr. O'Donnell to contact his office if the symptoms persisted.

Approximately five years and one month following the January 23, 1998 colonoscopy, Mr. O'Donnell returned to Dr. Siegel's office. Mr. O'Donnell again complained of irritable bowel syndrome and rectal bleeding. Once again, Dr. Siegel both prescribed hemorrhoidal cream and told Mr. O'Donnell to contact his office if the bleeding persisted. This February 2003 visit was the last time Dr. Siegel treated Mr. O'Donnell. Approximately five months after this visit, Mr. O'Donnell was diagnosed with colon cancer.[1]

In June 2005, Mr. O'Donnell, and his wife derivatively, commenced this action against Dr. Siegel and the medical practice with which he is affiliated to recover damages for medical malpractice based upon, among other things, Dr. Siegel's failure timely to diagnose Mr. O'Donnell's colon cancer. Following some discovery, defendants moved for summary judgment dismissing so much of the complaint as concerns events that occurred before the February 2003 office visit on statute of limitations grounds. Mr. O'Donnell and his wife opposed the motion, arguing that the continuous treatment doctrine tolled the statute of limitations until the February 2003 office visit, so that all of their claims were timely interposed. Supreme Court denied the motion, finding that the issue of the applicability of the continuous treatment doctrine was for the trier of fact, and this appeal ensued.

The two-year-and-six-month statute of limitations applicable to medical malpractice actions (CPLR 214-a) is tolled until the end of the course of treatment for a particular medical condition (*Nykorchuck v Henriques*, 78 NY2d 255, 257 [1991]) "when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint" (*Borgia v City of New York*, 12 NY2d 151, 155 [1962]). The continuous treatment doctrine, which recognizes that "[i]t would be absurd to require a wronged patient to interrupt corrective efforts by [commencing an action against] the [patient's treating] physician" (*id.* at

---

1. Mr. O'Donnell died shortly after this appeal was argued, and this appeal was stayed pending substitution of his estate as a plaintiff to the action. In January 2008, plaintiffs' counsel advised the Court that plaintiff Lisa O'Donnell had been appointed the administratrix of the estate, and the stay was lifted.

156), fosters the trust and confidence underlying the physician-patient relationship and encourages the treating physician to identify and correct his or her malpractice, thereby promoting efficacious medical care (*Nykorchuck*, 78 NY2d at 258). Accordingly, the determination of whether the continuous treatment doctrine applies must focus primarily on whether there was continuing trust in the physician on the part of the patient (*see e.g. Allende v New York City Health & Hosps. Corp.*, 90 NY2d 333, 338-339 [1997]; *see Young v New York City Health & Hosps. Corp.*, 91 NY2d 291, 296 [1998]; *Rizk v Cohen*, 73 NY2d 98, 104 [1989]). Additionally, "[w]here there is a direct physician-patient relationship, *continuous treatment exists only 'when further treatment is explicitly anticipated by both physician and patient* as manifested in the form of a regularly scheduled appointment for the near future, agreed upon during that last visit, in conformance with the periodic appointments which characterized the treatment in the immediate past' " (*Cox v Kingsboro Med. Group*, 88 NY2d 904, 906 [1996] [emphasis added], quoting *Richardson v Orentreich*, 64 NY2d 896, 898-899 [1985]; *see Young*, 91 NY2d at 297; *Allende*, 90 NY2d at 338).

Here, defendants made a prima facie showing of entitlement to judgment as a matter of law dismissing plaintiffs' claims to the extent they are based on acts and omissions that occurred before the February 2003 office visit since Mr. O'Donnell and his wife commenced this action in June 2005, more than two years and six months after those acts and omissions took place (*see Cox*, 88 NY2d at 906 [1996]). Thus, the burden shifted to plaintiffs to raise a triable issue of fact with respect to whether the continuous treatment doctrine tolled the statute of limitations for those claims (*see id.*).

Mr. O'Donnell visited Dr. Siegel's office six times between November 23, 1993 and February 20, 2003, each time complaining of the same or similar ailments, i.e., rectal bleeding and symptoms associated with acid reflux and irritable bowel syndrome. Thus, Mr. O'Donnell sought treatment for "a core group of conditions and complaints arising from or related to [his digestive tract aliment]" (*Couch v County of Suffolk*, 296 AD2d 194, 196 [2002]; *see Hein v Cornwall Hosp.*, 302 AD2d 170, 173-174 [2003]; *Marun v Coleburn*, 291 AD2d 340, 341 [2002]; *see also Dellert v Kramer*, 280 AD2d 438 [2001]).

However, plaintiffs failed to raise a triable issue of fact with respect to whether following the January 23, 1998 colonoscopy further treatment was explicitly anticipated by both Dr. Siegel and Mr. O'Donnell. Notably, Mr. O'Donnell's affidavit sheds no light on that crucial issue; Mr. O'Donnell merely averred that

"[o]n each occasion that [Dr. Siegel's] recommendations failed to help [Mr. O'Donnell's] symptoms, [he] returned to Dr. Siegel." Plaintiffs adduced no evidence indicating that between the January 1998 colonoscopy and the February 2003 office visit, scheduled future appointments were arranged, or that there was any contact between Mr. O'Donnell and Dr. Siegel (*see Young*, 91 NY2d at 297; *Rizk*, 73 NY2d at 103; *cf. Richardson, supra; Blaier v Cramer*, 303 AD2d 301 [2003]). Moreover, there is no evidence that, between the January 1998 colonoscopy and the February 2003 office visit, Mr. O'Donnell believed that further treatment was necessary (*see Young*, 91 NY2d at 297; *Rizk*, 73 NY2d at 103).[2]

Accordingly, Supreme Court erred in denying defendants' motion.

(March 20, 2008)

---

2. The five-year gap between Mr. O'Donnell's January 23, 1998 colonoscopy and the February 20, 2003 office visit does not automatically preclude application of the continuous treatment doctrine. To the contrary, in *Massie v Crawford* (78 NY2d 516, 519 [1991]), the Court noted that an interval between visits of almost three years "is not per se dispositive of defendant's claim that the statute [of limitations] has run, but because of it the burden shifted to plaintiff to establish that her examinations constituted 'continuous treatment' and that the tolling exception was applicable." In so noting, the Court (*id.*) cited its statement in *Rizk v Cohen* (73 NY2d at 103) that "if continuous treatment is found to exist, the Statute of Limitations was tolled during the 3½ years between plaintiff's contact with [the defendant doctor], and plaintiff's action would be timely" (citation omitted). Although the Second Department has held that "the continuous treatment doctrine is inapplicable where the interval of time between visits or treatments exceeds the applicable period of limitations" (*Marmol v Green*, 7 AD3d 682, 682 [2004], quoting *Grellet v City of New York*, 118 AD2d 141, 149 [2d Dept 1986]), that rule is contrary to the Court of Appeals' pronouncement in *Massie* and is not followed in the other Departments (*see e.g. Swift v Colman*, 196 AD2d 150, 152-153 [3d Dept 1994]; *Shumway v DeLaus*, 152 AD2d 951, 951 [4th Dept 1989], *lv dismissed* 75 NY2d 946 [1990]; *cf. Rudolph v Jerry Lynn, D.D.S., P.C.*, 16 AD3d 261 [1st Dept 2005] [22-month gap between visits not itself a bar to application of doctrine]).