■ MARILYN COLE, as Executor of PETER G. CLARK, Deceased, et al., Appellants, v RICHARD G. KARANFILIAN, M.D., P.C., et al., Respondents, et al., Defendants. [985 NYS2d 141]—

In an action, inter alia, to recover damages for medical malpractice and wrongful death, the plaintiffs appeal from so much of an order of the Supreme Court, Westchester County (Giacomo, J.), dated June 20, 2012, as granted the motion of the defendants Richard G. Karanfilian, M.D., P.C., Richard G. Karanfilian, New Rochelle Radiology Associates, P.C., and Jane S. Bennett for summary judgment dismissing the complaint insofar as asserted against them as time-barred.

Ordered that the order is affirmed insofar as appealed from, with costs.

Peter G. Clark (hereinafter the decedent) died of malignant myxoid round cell liposarcoma on October 25, 2009. In July 2001, the decedent saw his primary care physician, Owen O'Neill, about a lump on his left forearm. O'Neill sent the decedent for an X ray, which was performed in August 2001 at the defendant New Rochelle Radiology Associates, P.C. (hereinafter New Rochelle Radiology). Thereafter, in January 2002, O'Neill sent the decedent for an MRI of the left forearm and a second X ray. Those tests were also performed at the defendant New Rochelle Radiology. On January 30, 2002, the defendant Jane S. Bennett, a partner of New Rochelle Radiology, read the MRI and concluded that the mass was "consistent with a hematoma." O'Neill informed the decedent of the results of the diagnostic tests.

In October 2002, the decedent's dermatologist observed the lump on the decedent's forearm and referred the decedent to a surgeon, the defendant Richard G. Karanfilian. Karanfilian practiced through a professional corporation bearing his name, which is also a defendant in this action. The decedent's first visit with Karanfilian was on November 12, 2002. After examining the decedent and being told by the decedent that the lump was decreasing in size, and after reviewing the January 2002 MRI report, Karanfilian's clinical impression of the decedent's condition was "myositis calcificans or hematoma." Although

Karanfilian told the decedent that he could have the lump removed, he also told the decedent that there was not a need for immediate surgery. The decedent opted to not have the surgery. Karanfilian also told the decedent "to keep his eye on it for the next few weeks and see if it goes away in a month or so," and that if the lump started to cause him pain or increased in size, he should return to the surgeon's office.

From November 12, 2002, until May 4, 2005, the decedent had no contact with Karanfilian. On May 4, 2005, the decedent returned to Karanfilian's office to have the lump removed because his new dermatologist had been concerned about the size of the lump. On May 16, 2005, the mass was surgically removed and analysis of the tumor indicated "round cell liposarcoma." After the surgery, the decedent returned to Karanfilian three or four times for follow-up visits and he had several diagnostic tests performed at New Rochelle Radiology. In 2007, the cancer returned.

The decedent and his wife, suing derivatively, commenced this action in September 2007. Thereafter, the defendants Richard G. Karanfilian, Richard G. Karanfilian, M.D., P.C., New Rochelle Radiology, and Bennett (hereinafter collectively the defendants) moved for summary judgment dismissing the complaint insofar as asserted against them on the ground that the plaintiffs' claims were time-barred. The Supreme Court granted the motion, and the plaintiffs appeal.

Karanfilian and his professional corporation established their prima facie entitlement to judgment as a matter of law by demonstrating that the action was commenced more than two years and six months after the alleged act of malpractice occurred (*see Massie v Crawford*, 78 NY2d 516, 519 [1991]). The burden then shifted to the plaintiffs to establish the applicability of the continuous treatment doctrine, which tolls the statute of limitations until the end of the course of treatment (*see Schwelnus v Urological Assoc. of L.I., P.C.*, 94 AD3d 971 [2012]). The plaintiffs failed to show that there was a continuous course of treatment. There was no showing that Karanfilian ever undertook to continue to treat the decedent's lump condition. Nor was there any showing of any contemplation of further treatment for the lump condition, as evidenced by the fact that the decedent did not schedule any other appointment with Karanfilian until he returned to see him in 2005, because his new dermatologist expressed concern and suggested he see a surgeon. Karanfilian's statement to the decedent to return if there were any changes in his condition does not indicate that further treatment was contemplated (*see Nykorchuck v Hen-*

*riques,* 78 NY2d 255 [1991]; *Casale v Hena,* 270 AD2d 680 [2000]). Further, the May 4, 2005, visit cannot be considered a part of continuing treatment since the decedent initiated this return visit with Karanfilian only at his dermatologist's suggestion that he see a surgeon (*see Massie v Crawford,* 78 NY2d 516, 519 [1991]). Under these circumstances, where the decedent had no knowledge of a medical condition and, therefore, had no reason to expect ongoing treatment for it from Karanfilian, there is no reason to apply the continuous treatment doctrine (*see Young v New York City Health & Hosps. Corp.,* 91 NY2d 291, 296 [1998]; *Nykorchuck v Henriques,* 78 NY2d 255 [1991]; *Davis v City of New York,* 38 NY2d 257 [1975]; *Robertson v Bozza & Karafiol,* 242 AD2d 613 [1997]).

The Supreme Court also properly granted that branch of the motion which involved Bennett and New Rochelle Radiology. Bennett and New Rochelle Radiology established their prima facie entitlement to judgment as a matter of law by demonstrating that the action was commenced more than two years and six months after the alleged act of malpractice (*see Capece v Nash,* 70 AD3d 743 [2010]). In opposition, the plaintiffs failed to raise a triable issue of fact as to whether the decedent was undergoing a continuous course of treatment. "In general, the continuous treatment doctrine does not apply to a diagnostician, such as a radiologist, who renders discrete, intermittent medical services, unless the diagnostician has a continuing or other relevant relationship with the patient or acts as an agent for the physician or otherwise acts in relevant association with the physician" (*Kaufmann v Fulop,* 47 AD3d 682, 684 [2008] [internal quotation marks omitted]). Here, the single MRI reading by Bennett did not constitute continuing treatment. Bennett did not read any other MRIs belonging to the decedent and there was no future expectation that there would be MRIs or X rays taken after the January 30, 2002, MRI (*see McDermott v Torre,* 56 NY2d 399 [1982]; *Elkin v Goodman,* 24 AD3d 717 [2005]; *Sweet v Austin,* 226 AD2d 942, 943-944 [1996]; *Noack v Symenow,* 132 AD2d 965, 966 [1987]). Moreover, there was no continuous treatment by New Rochelle Radiology. Mastro, J.P., Chambers, Lott and Duffy, JJ., concur.