■ MICHELLE LEWIS, Respondent, v FREDERICK D. RUTKOVSKY, M.D., et al., Appellants. [58 NYS3d 391]—

Order, Supreme Court, New York County (Joan B. Lobis, J.), entered on or about April 21, 2015, which denied defendants' motions for summary judgment as untimely, affirmed, without costs. Appeals from order, same court and Justice, entered April 18, 2016, which, upon effectively granting defendants' motions for reargument, adhered to the prior order, dismissed, without costs, as academic.

In this medical malpractice action, plaintiff claimed to have suffered injuries as a result of negligent care she received from defendant Frederick D. Rutkovsky, M.D., plaintiff's primary care physician, and, vicariously, from defendant LHHN Medical P.C.[1] Specifically, plaintiff alleged that Dr. Rutkovsky failed to detect, diagnose, and treat a meningioma (that is, a benign brain tumor) from on or about April 3, 1998 until September 5, 2007. In support of her allegations, plaintiff asserted that Dr. Rutkovsky "ignored" her repeated complaints of migraine headaches, blurred vision, and other related symptoms. Plaintiff ultimately underwent a left frontal parasagittal craniotomy and suffered a loss of vision rendering her legally blind. By complaint dated March 5, 2010, plaintiff commenced this action against LHHN Medical, P.C., and Lenox Hill Community Medical Group, P.C. (together LHHN) and Dr. Rutkovsky, alleging medical malpractice and lack of informed consent.

By order to show cause filed with the County Clerk's office on January 23, 2015 and dated January 28, 2015, LHHN moved for summary judgment. On the motion, LHHN asserted that plaintiff's malpractice claims were time-barred, as she had commenced the action on March 5, 2010, more than two and one-half years after her last appointment with Dr. Rutkovsky at LHHN on September 5, 2007. LHHN further contended, preemptively, that plaintiff's care did not fall within the continuous treatment exception to the statute of limitations because she was not involved in a continuous course of treatment related to her headaches. Dr. Rutkovsky moved separately for summary judgment, filing his order to show cause on January 26, 2015. Like LHHN, Dr. Rutkovsky asserted that plaintiff's claims for treatment before September 5, 2007 were time-barred. Dr. Rutkovsky also asserted that

---

1. LHHN Medical P.C., doing business as Manhattan's Physician Group and formerly known as Lenox Hill Community Medical Group, is sued in this action as Lenox Hill Community Medical Group, P.C.

plaintiff's informed consent claim should be dismissed, since plaintiff's allegations did not involve an invasive diagnostic procedure.

In opposition, plaintiff asserted that defendants' motions could not be entertained because they were untimely. Plaintiff noted that the court's part rules, as set forth in the Preliminary Conference Order, stated that "[m]otions for Summary Judgment and/or other dispositive motions shall be made no later than 60 (sixty) days from the filing of the Note of Issue, unless the Court directs otherwise."[2] Therefore, plaintiff concluded, because the note of issue was filed on November 25, 2014, all dispositive motions were to be made no later than January 26, 2015.

Plaintiff also opposed defendants' motions on the merits, opining by way of expert affidavits that defendants' actions had constituted deviations from the applicable standard of care. With respect to the statute of limitations, plaintiff argued that her visits from March 1999, when she first complained of headaches to Dr. Rutkovsky, to February 5, 2007, fell under the "continuous treatment" doctrine, and thus, that the doctrine should apply to toll the statute of limitations.

Dr. Rutkovsky and LHHN argued that their motions were timely because, among other things, on the day they filed their OSCs, court closed early because of Winter Storm Juno, a major storm, and was also closed the following day. The court closings, they argued, led to the delay in obtaining the court's signature on the orders. Nonetheless, defendants argued that they timely filed their OSCs with the court in good faith and within the 60-day time limit, and that the inclement weather contributed to the delay in obtaining the court's signature on the order.

Basing its decision on its part rules requiring that post note of issue dispositive motions must be made no later than 60 days after the filing of the note of issue, the court found defendants' motions for summary judgment to be untimely. The court rejected defendants' argument that the court's setting of a service and return date constituted approval of the late motion. Rather, the court found the motions to be untimely, as neither party made its motion for summary judgment by January 26, 2015, and, according to the court, neither movant ad-

---

**2.** The phrase "by order to show cause" was inserted by hand in the PC order, so that the paragraph read, "Motions for Summary Judgment and/or other dispositive motions shall be made *by order to show cause* no later than 60 (sixty) days from the filing of the Note of Issue, unless the Court directs otherwise" (emphasis added).

dressed the issue of good cause, which the court could not consider sua sponte. The court accordingly denied defendants' motions without addressing the merits.

To begin, as a procedural matter, we may properly consider defendants' appeal from the order denying their motion to reargue. In general, an order denying a motion for reargument is not appealable (*see e.g. Kitchen v Crotona Park W. Hous. Dev. Fund Corp.*, 145 AD3d 521 [1st Dept 2016]). Here, however, although the motion court purported to deny the motion to reargue, it nonetheless considered the merits of defendants' argument that the inclement weather on the motion's due date provided good cause for the delay. As a result, the court, in effect, granted reargument, then adhered to the original decision (*see Matter of 1234 Broadway, LLC v New York State Div. of Hous. & Community Renewal*, 102 AD3d 628, 629 [1st Dept 2013]). The April 18, 2016 order is therefore appealable (*id.*).

Turning now to the merits of this appeal, we find that the motion court improvidently exercised its discretion in finding that the motions were untimely and declining to consider them on that basis. Under CPLR 3212 (a), a motion for summary judgment must be made within 120 days of the filing of the note of issue. So long as it is within that time period, the court may set forth its own deadline, in which case the court's directive controls (*see McFadden v 530 Fifth Ave. RPS III Assoc., LP*, 28 AD3d 202, 202-203 [1st Dept 2006]). Accordingly, when a motion for summary judgment is untimely, the movant must show good cause for the delay; otherwise the late motion will not be addressed (*see Andron v City of New York*, 117 AD3d 526 [1st Dept 2014]). Further, a court has broad discretion in determining whether the moving party has established good cause for the delay, and its determination will not be overturned unless it is improvident (*see Gonzalez v 98 Mag Leasing Corp.*, 95 NY2d 124, 129 [2000]).

Dr. Rutkovsky filed his OSC with the clerk's office on January 26, 2015; the court signed it on January 29, 2015 and Dr. Rutkovsky served it on January 30, 2015. Likewise, LHHN filed its OSC on January 23, 2015; the court signed it on January 28, 2015 and LHHN served it on February 2, 2015. No party disputes that, on the day the orders would usually have been processed and timely signed, inclement weather from Winter Storm Juno created a "state of emergency" and caused the early closure of the courts; indeed, because of the storm, the Governor signed an executive order suspending legal deadlines.

Indeed, even if we were to find that the orders were untimely, the weather conditions and resulting court closing provides "good cause" for the de minimis delay. Under these circumstances, the motion court should have considered defendants' motions for summary judgment on the merits (*see e.g. Butt v Bovis Lend Lease LMB, Inc.*, 47 AD3d 338, 339-340 [1st Dept 2007]; *see also Pippo v City of New York*, 43 AD3d 303 [1st Dept 2007]).

Turning to the merits of defendants' motions, the record presents issues of fact as to continuous treatment. As is well established, "the continuous treatment doctrine tolls the Statute of Limitations for a medical malpractice action when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint" (*Cox v Kingsboro Med. Group*, 88 NY2d 904, 906 [1996] [internal quotation marks omitted]). In addition, "[w]here the malpractice claim is based on an alleged failure to properly diagnose a condition, the continuous treatment doctrine may apply as long as the symptoms being treated indicate the presence of that condition" (*Wilson v Southampton Urgent Med. Care, P.C.*, 112 AD3d 499, 500 [1st Dept 2013] [internal quotation marks omitted]).

Here, read in the light most favorable to plaintiff, the record contains issues of fact as to whether from March 1999 until at least September 5, 2007 there was continuity of treatment for symptoms—namely, recurring and sometimes severe headaches—that were traceable to plaintiff's meningioma (*see id.* at 500-501). If so, the course of treatment would render plaintiff's action timely, as the statute of limitations would be tolled between March 1999 and September 2007.

Our decision in *Wilson* is instructive. In *Wilson*, the decedent received treatment at a walk-in clinic on 11 occasions between September 1, 2003 and July 21, 2005. At those visits, the decedent complained of headaches; she was eventually diagnosed with metastasized lung cancer. During his deposition, one of the defendants conceded that a brain tumor from metastasized lung cancer would, in fact, cause headaches, and he testified that on that basis, he had recommended an MRI and neurological consult (*id.* at 500). Under those circumstances, we affirmed the denial of the defendants' motion for summary judgment, finding that there existed a triable question of fact as to whether the decedent's visits to the defendants for the applicable period were part of continuous treatments for headaches that were traceable to the lung cancer that killed her.

The same reasoning applies here. Given the fact that plaintiff complained of headaches or vision difficulties, or both, on at least six occasions between March 1999 and September 2007, the record presents an issue of fact as to whether, before September 5, 2007, defendants were consistently monitoring plaintiff for specific symptoms related to the meningioma. In fact, if anything, the symptoms in *Wilson* were more attenuated from the ultimate diagnosis than the symptoms in this case.

Our dissenting colleague insists that the continuous treatment doctrine cannot apply, asserting that there was no evidence of regular appointments or ongoing treatment for plaintiff's headache-related complaints. Putting aside the fact that the assertion mischaracterizes the record—in fact, plaintiff testified that once per month from January 2007 until June 2007 she complained of "extreme" headaches that were not helped by over-the-counter medication—it is a red herring, as it has no bearing on whether the record contains evidence that the continuous treatment doctrine may apply. On the contrary, the case law contains no requirement that a plaintiff have attended "regular" appointments in the sense that the appointments were scheduled for the sole purpose of treating the allegedly misdiagnosed condition. Rather, the inquiry centers on whether the treated symptoms indicated the presence of the condition that was not properly diagnosed—here, a meningioma that gave rise to plaintiff's severe headaches and partial loss of vision, both of which Dr. Rutkovsky undertook to treat by, among other things, prescribing reading glasses (*see Wilson*, 112 AD3d at 500; *see also Devadas v Niksarli*, 120 AD3d 1000, 1006 [1st Dept 2014] ["(i)n determining whether continuous treatment exists, the focus is on whether the patient believed that further treatment was necessary, and whether he sought such treatment"], citing *Rizk v Cohen*, 73 NY2d 98, 104 [1989]; *Simons v Bassett Health Care*, 73 AD3d 1252, 1254 [3d Dept 2010]).

The dissent attempts to dismiss the record testimony of once-monthly visits over a six-month period by asserting that plaintiff gave "self-serving" deposition testimony about those visits. There is nothing "self-serving," in a legal sense, about deposition testimony that favors the party giving it. Rather, testimony is said to be self-serving when it contradicts prior testimony—a situation that does not exist here (*see e.g. Capuano v Tishman Constr. Corp.*, 98 AD3d 848, 851 [1st Dept 2012] [an affidavit that does not contradict one's prior deposition testimony and "provides additional details illuminating"

the prior testimony is not considered self-serving]). Whether the testimony is "self-serving" in the sense that it is incredible on its face, and therefore creates no material issue of fact, is an issue for the factfinder to resolve.

Likewise, contrary to the dissent's characterization, plaintiff's deposition testimony does not amount to mere "[c]onclusory allegations" in any sense that that phrase is used to defeat a motion for summary judgment. Plaintiff's deposition testimony was factual, simply reflecting her recollections of how often she visited Dr. Rutkovsky during a certain time period and what she recalled telling him at those times. Applying the word "conclusory" to such testimony is not meaningful in this context; plaintiff was not making a legal conclusion about continuing treatment, but merely testifying to her recollection of events (*cf. McGahee v Kennedy*, 48 NY2d 832, 834 [1979] [summary judgment not defeated by the defendant's conclusory statements that he was coerced to sign amendment to separation agreement]). Whether this testimony is credible is a matter to be evaluated by the factfinder, not by the court on summary disposition.

In a similar vein, the dissent insists that "plaintiff does not connect these purported visits between January and June 2007 to her documented visit in September 2007, or otherwise raise an issue regarding a continuing course of treatment for headaches." We disagree with this statement because, as noted above, plaintiff did, in fact, testify that she told Dr. Rutkovsky about her headaches during these once-monthly visits. Specifically, she testified that she was "at his office [once a month] telling him about . . . headaches [that] were getting more and more extreme" such that she could not get out of bed, and were not alleviated by Ibuprofen. This testimony, read in the light most favorable to plaintiff, is quite sufficient to raise an issue of fact, which is all that the law requires at this stage (*see e.g. Chestnut v Bobb-McKoy*, 94 AD3d 659, 662 [1st Dept 2012]).

We note that plaintiff does not address defendants' arguments regarding the cause of action for informed consent, and specifically notes in her papers that she does not intend to pursue that claim. At any rate, the informed consent claim lacks merit. As we have held, "[a] failure to diagnose cannot be the basis of a cause of action for lack of informed consent unless associated with a diagnostic procedure that 'involve[s] invasion or disruption of the integrity of the body' " (*Janeczko v Russell*, 46 AD3d 324, 325 [1st Dept 2007], quoting Public Health Law § 2805-d [2] [b]).

Finally, we specifically decline to reach the issue of whether

a departure from the applicable standard of care was a cause of plaintiff's brain surgery or vision loss, because the trial court never considered that issue. Thus, we need not address the dissent's discussion of causation. We find only that the record presents issues of fact about the continuous treatment doctrine for the trial judge to evaluate.

In light of our decision, we need not consider the parties' remaining arguments. Concur—Moskowitz, Gische and Kapnick, JJ.

Tom, J.P., dissents in a memorandum as follows: While I agree with the majority that defendants showed good cause for the de minimis delay in the filing of their summary judgment motions, and that Supreme Court should have considered the motions on the merits, I would grant defendants' motions for summary judgment as plaintiff failed to raise triable issues of fact as to the continuous treatment doctrine or that defendants committed medical malpractice. Accordingly, I respectfully dissent.

On March 5, 2010, plaintiff commenced this action against defendant Frederick D. Rutkovsky, M.D., her primary care physician, and, defendants LHHN Medical P.C. and Lenox Hill Community Medical Group, P.C. (together LHHN), seeking damages for injuries—including a frontal craniotomy and loss of vision—related to a meningioma, i.e. a benign brain tumor. Plaintiff alleged that Dr. Rutkovsky failed to detect, diagnose, and treat the meningioma from on or about April 3, 1998 to September 5, 2007. Specifically, she asserted that Dr. Rutkovsky "ignored" her primary complaints of headache, including occasional complaints of blurred vision, and other related symptoms.

In their motions for summary judgment, defendants contended that plaintiff's malpractice claims were time-barred, as she commenced the action on March 5, 2010, more than two and a half years after her last appointment with Dr. Rutkovsky at LHHN on September 5, 2007. They maintained that plaintiff's care did not fall within the continuous treatment exception to the statute of limitations because she was not involved in a continuous course of treatment concerning her headaches and/or vision issues. Defendants also maintained that the medical services provided to plaintiff were within good and accepted medical practice.

"The continuous treatment doctrine tolls the Statute of Limitations for a medical malpractice action when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition

or complaint" (*Cox v Kingsboro Med. Group*, 88 NY2d 904, 906 [1996] [internal quotation marks omitted]). "Where the malpractice claim is based on an alleged failure to properly diagnose a condition, the continuous treatment doctrine may apply as long as the symptoms being treated indicate[d] the presence of that condition" (*Wilson v Southampton Urgent Med. Care, P.C.*, 112 AD3d 499, 500 [1st Dept 2013] [internal quotation marks omitted]).

Plaintiff's medical records reveal that she first sought treatment from Dr. Rutkovsky on April 3, 1998, complaining of allergies and congestion. Thereafter, of the approximately 30 visits to Dr. Rutkovsky between 1998 and 2007 documented by her medical records, plaintiff sporadically complained of headaches and/or vision issues on only five occasions: March 1, 1999; July 14, 1999; July 23, 2004; November 8, 2006; September 5, 2007.

Notably, plaintiff visited Dr. Rutkovsky through these years for routine annual checkups and for other concerns, and there are gaps of years between the 1999 and 2004 visits, and the 2004 and 2006 visits during which there is no evidence of explicit anticipation "by both physician and patient" of further treatment "as manifested in the form of a regularly scheduled appointment for the near future" relating to the same original condition or complaint concerning her headaches (*Cox*, 88 NY2d at 906 [internal quotation marks omitted]). Rather, it appears plaintiff's complaints of headaches were isolated and not part of a continuous course of treatment. Indeed, Dr. Rutkovsky noted that plaintiff never complained of headaches at any two contiguous visits and that five years elapsed between the second complaint of headaches in 1999 and her third complaint in 2004. Then there was a gap of two more years before she complained of headaches in 2006. In sum, plaintiff complained of headaches and/or vision problems on five separate occasions with long gaps in between during approximately 30 visits to Dr. Rutkovsky and over a period of close to a decade. Clearly, this set of circumstances cannot support a continuous course of treatment for plaintiff's sporadic complaints of headache.

In opposition to defendants' prima facie showing that so much of the complaint as alleged medical malpractice committed before September 5, 2007 was barred by the governing statute of limitations, contrary to the majority's contention, plaintiff failed to raise a triable issue of fact. The majority, relying solely on plaintiff's self-serving deposition testimony, claims that I mischaracterized the record in asserting that there was no evidence of regular appointments or ongoing

treatment for plaintiff's headache-related complaints. However, the medical records in evidence do not show that there were any visits by the plaintiff to Dr. Rutkovsky between January and June 2007 at which she complained of headaches or received treatment for that ailment. Instead, the medical records show that plaintiff presented during those months with only back pain and gynecological concerns. Moreover, plaintiff's testimony was unsure. In response to questions about how often she saw Dr. Rutkovsky in that time period, she could only state "I think it was once a month," and no medical records corroborate her claim that she complained of headaches during those visits in any event. Conclusory allegations, without more, are insufficient to defeat summary judgment (*see McGahee v Kennedy*, 48 NY2d 832, 834 [1979]). Further, plaintiff's equivocal testimony did not create a genuine issue as it was contradicted by the documentary evidence, and thus failed to raise a triable issue of fact (*see Bank of N.Y. v 125-127 Allen St. Assoc.*, 59 AD3d 220 [1st Dept 2009]; *see also Glick & Dolleck v Tri-Pac Export Corp.*, 22 NY2d 439, 441 [1968]). Here, plaintiff's bare, equivocal statements of the times she saw Dr. Rutkovsky during this time period concerning complaints of headache, contradicted by the medical records, is insufficient to raise a factual issue concerning continuous treatment. Moreover, plaintiff does not connect these purported visits between January and June 2007 to her documented visit in September 2007, or otherwise raise an issue regarding a continuing course of treatment for headaches.

As noted, plaintiff's medical records demonstrate only sporadic complaints of headache and/or vision issues over the course of almost a decade, and there is no evidence to show that both Dr. Rutkovsky and plaintiff "explicitly anticipated" that Dr. Rutkovsky would treat plaintiff for a specific condition. In fact, there was no evidence of regular appointments or ongoing treatment for plaintiff's sporadic headache-related complaints. Accordingly, these circumstances fail to rise to the level of "continuous treatment" articulated by the controlling case law (*Cox*, 88 NY2d at 906). The majority's bare allegation that issues of fact are raised as to continuous treatment is unsupported and belied by the record of this case.

Contrary to the majority's reading of the relevant case law, while the "determination as to whether continuous treatment exists . . . must focus on the patient" (*Rizk v Cohen*, 73 NY2d 98, 104 [1989]), the patient is required to make timely return visits related to the same original condition or complaint (*see McDermott v Torre*, 56 NY2d 399, 405-406 [1982]; *see also Cox*,

88 NY2d at 906, citing *Borgia v City of New York*, 12 NY2d 151, 155 [1962]). Thus, while we must look at "whether the patient believed that further treatment was necessary, and whether [s]he sought such treatment" (*Devadas v Niksarli*, 120 AD3d 1000, 1006 [1st Dept 2014]), here, the medical records reflect plaintiff did not consistently seek treatment for headaches. Nor does the record evidence support the claim that Dr. Rutkovsky was "consistently treating and/or monitoring [plaintiff] for specific symptoms related" to meningioma (*Chestnut v Bobb-McKoy*, 94 AD3d 659, 661 [1st Dept 2012]).

This case is akin to *O'Donnell v Siegel* (49 AD3d 415, 417 [1st Dept 2008]) where, over a nine-year period, the defendant physician on five separate occasions treated the plaintiff "as he appeared," and there was no discussion of a "course of treatment" or evidence that further treatment was explicitly anticipated by doctor and patient. Further, as is also the case here, in *O'Donnell* there was a gap of five years during which no treatment was rendered relating to the original condition, and the return five years later was fairly characterized as a "renewal" rather than a continuation of the relationship. We held that in such circumstances the motion court should have dismissed the plaintiff's claims as time-barred and that the continuous treatment doctrine could not be invoked by the plaintiff (49 AD3d at 417).

The majority's reliance on *Wilson v Southampton Urgent Med. Care, P.C.* (112 AD3d 499, 500 [1st Dept 2013], *supra*) is misplaced. First, all of the plaintiff's 11 visits to the physician in *Wilson* took place over a period less than two years. Further, at each of those visits the plaintiff apparently complained of headaches. Moreover, in *Wilson*, this Court found that the plaintiff raised a triable issue of fact regarding whether he was receiving continuous treatment for symptoms related to lung cancer where the treating physician admitted that a brain tumor from metastasized lung cancer would cause headaches; the physician considered the possibility of a brain tumor in his differential diagnosis; and the physician recommended a MRI and neurological consult. Here, by contrast, the evidence shows that there was no continuous course of treatment for her periodic complaints of headache and/or vision issues over a period of almost a decade long.

In addition, while the majority posits that the symptoms in *Wilson* were more attenuated from the ultimate diagnosis than the symptoms in this case, this argument misses the mark. Rather, the holding in *Wilson* was supported by a substantial number of visits in a short time period all of which dealt with

the same complaint of headaches. Such circumstances clearly do not exist in this case.

Notably, in *Simons v Bassett Health Care* (73 AD3d 1252 [3d Dept 2010]), relied on by the majority, the patient's entire course of treatment took place over less than three years and included numerous visits for "complaints or ongoing treatment of migraines, headaches, dizziness, pain on the right side of her face and blurred vision" which were suggestive of or consistent with meningioma (*id.* at 1255). Thus, *Simons* turned on the frequency of visits over a shorter time span during which the patient sought treatment for complaints related to her meningioma. Again, such circumstances do no exist here (*see also Chestnut*, 94 AD3d at 662 [finding triable issue of fact as to whether continuous treatment existed where patient made "frequen(t)" visits for, inter alia, bilateral knee pain, leg swelling and high levels of alkaline phosphates in the blood (symptoms associated with lung cancer) over "relatively short period of 13 months" and where doctor engaged in "intens(e)" course of treatment of the plaintiff's knee condition]). Once again, plaintiff's occasional complaints of headaches during visits to Dr. Rutkovsky span over a period of close to a decade.

With respect to plaintiff's remaining timely allegation that defendants committed medical malpractice on her last visit on September 5, 2007, plaintiff again failed to raise a triable issue of fact in opposition to defendants' prima facie showing. Based on the record, defendants established that Dr. Rutkovsky did not deviate from the accepted standard of care when plaintiff presented at his office on her last visit complaining of headache and vision disturbances by advising her to return for a neurology referral if her symptoms did not subside in one week. It is undisputed that plaintiff did not seek further neurological treatment or medical attention from Dr. Rutkovsky. She was subsequently diagnosed with a meningioma in November 2007, when she was admitted to the emergency room with vision complaints. Plaintiff's expert affirmations submitted in opposition were conclusory and speculative, and, thus, insufficient to raise a question of fact as to defendants' liability (*see Diaz v New York Downtown Hosp.*, 99 NY2d 542, 544 [2002]).

Accordingly, I would reverse the order on appeal and grant defendants' summary judgment motions to dismiss the action.