Weinstein v Gewirtz (2022 NY Slip Op 04997)

Weinstein v Gewirtz

2022 NY Slip Op 04997

Decided on August 17, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 17, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
COLLEEN D. DUFFY
VALERIE BRATHWAITE NELSON
SHERI S. ROMAN, JJ.

2019-11270
 (Index No. 610877/15)

[*1]Ellen Weinstein, appellant, 
v
Ilene Gewirtz, etc., et al., respondents, et al., defendants.

Barry Semel-Weinstein (Pollack, Pollack, Isaac & DeCicco, LLP, New York, NY [Jillian Rosen], of counsel), for appellant.
Dorf & Nelson, LLP, Rye, NY (Anna Schwartz and Heidi Lewis of counsel), for respondents.

DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice, the plaintiff appeals from an order of the Supreme Court, Suffolk County (William G. Ford, J.), dated September 10, 2019. The order granted the motion of the defendants Ilene Gewirtz, Ilene Gewirtz, GYN, P.C., and A Woman's Way Practice of Gynecology pursuant to CPLR 3211(a)(5) to dismiss, as time-barred, so much of the complaint as was based upon alleged acts of medical malpractice occurring prior to April 9, 2013, insofar as asserted against them.
ORDERED that the order is affirmed, with costs.
The plaintiff treated with the defendant Ilene Gewirtz between September 2009 and April 2013. Gewirtz provided the plaintiff with medical treatment for symptoms related to perimenopause and, over time, for symptoms related to menopause syndrome and general gynecological care. This care included annual visits and checkups, and prescriptions for mammograms. Gewirtz also diagnosed the plaintiff with certain menopausal conditions, including atrophic vaginitis, fibroid uterus, and postmenopausal bleeding, and provided specific treatment for these conditions. This treatment included a pelvic ultrasound, which revealed an ovarian cyst. Based on the results of the pelvic ultrasound, on March 7, 2013, Gewirtz performed a dilation and curettage procedure, which included the removal of an endometrial polyp. The surgical pathology report of the tissue recovered during the procedure revealed, among other things, rare benign endocervical cells.
In February 2014, 10 months after the plaintiff's last treatment with Gewirtz, a physician in a different medical practice diagnosed the plaintiff with, inter alia, osteoporosis of the spine and osteopenia in both femurs.
On October 9, 2015, the plaintiff commenced this action, inter alia, to recover damages for medical malpractice against, among others, Gewirtz and the defendants Ilene Gewirtz, GYN, P.C., and A Woman's Way Practice of Gynecology (hereinafter collectively the defendants). The complaint alleges, among other things, that the defendants failed to timely diagnose and treat her osteoporosis. The defendants moved pursuant to CPLR 3211(a)(5) to dismiss, as time-barred, [*2]so much of the complaint as was based upon alleged acts of medical malpractice occurring prior to April 9, 2013, insofar as asserted against them. In support of their motion, the defendants submitted some of the plaintiff's medical records dated during her course of treatment with the defendants. The plaintiff opposed the motion. In an order dated September 10, 2019, the Supreme Court granted the defendants' motion. The plaintiff appeals.
"In moving to dismiss a cause of action pursuant to CPLR 3211(a)(5) as barred by the applicable statute of limitations, the moving defendant bears the initial burden of demonstrating, prima facie, that the time within which to commence the cause of action has expired. The burden then shifts to the plaintiff to raise a question of fact as to whether the statute of limitations is tolled or is otherwise inapplicable" (Schrull v Weis, 166 AD3d 829, 831 [internal quotation marks omitted]; see Stein Indus., Inc. v Certilman Balin Adler & Hyman, LLP, 149 AD3d 788, 789).
"A medical malpractice action 'must be commenced within two years and six months of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure'" (Wright v Southampton Hosp., 187 AD3d 1242, 1244, quoting CPLR 214-a). "'Under the continuous treatment doctrine, the limitations period does not begin to run until the end of the course of treatment if three conditions are met: (1) the patient continued to seek, and in fact obtained, an actual course of treatment from the defendant physician during the relevant period; (2) the course of treatment was for the same conditions or complaints underlying the plaintiff's medical malpractice claim; and (3) the treatment is continuous'" (Wright v Southampton Hosp., 187 AD3d at 1244, quoting Mello v Long Is. Vitreo-Retinal Consultant, P.C., 172 AD3d 849, 850).
"The critical inquiry is not whether the defendant failed to make a diagnosis or undertake a course of treatment during the period of limitation, but whether the plaintiff continued to seek treatment for the same or related conditions giving rise to his or her claim of malpractice, during that period" (Cohen v Gold, 165 AD3d 879, 882). "Accordingly, a defendant cannot defeat the application of the continuous treatment doctrine merely because of a failure to make a correct diagnosis as to the underlying condition, if the defendant treated the plaintiff continuously over the relevant time period for symptoms that are ultimately traced to that condition" (id. at 882).
Here, the defendants established, prima facie, that so much of the complaint as was based upon alleged acts of medical malpractice occurring prior to April 9, 2013, was time-barred, by demonstrating that this action was commenced more than 2½ years after the alleged acts of malpractice that occurred prior to April 9, 2013 (see CPLR 214-a; Cohen v Gold, 165 AD3d at 881).
In opposition, the plaintiff failed to raise a question of fact as to whether the statute of limitations was tolled by the continuous treatment doctrine (see Nykorchuck v Henriques, 78 NY2d 255, 259; Smith v Cooper, 172 AD3d 776, 778; Cole v Richard G. Karanfilian, M.D., P.C., 117 AD3d 670). The plaintiff sought treatment for perimenopausal and gynecological conditions. None of the three prerequisites necessary to establish a continuous course of treatment for osteoporosis were satisfied. Affording the plaintiff the benefit of all favorable inferences to which she is entitled (see Schrank v Lederman, 52 AD3d 494, 496), the record, which includes the defendants' submission of the medical records documenting the plaintiff's course of treatment with Gewirtz, contains no indication that the plaintiff ever complained of, sought treatment for, or was treated in connection with any symptoms related to osteoporosis, or that Gewirtz ever diagnosed her with osteoporosis (cf. Cohen v Gold, 165 AD3d at 882; Javaid v Jajoo, 127 AD3d 1027, 1028; Couch v County of Suffolk, 296 AD2d 194, 196; Hill v Manhattan W. Med. Group—H.I.P., 242 AD2d 255). Since there was no actual course of treatment for osteoporosis or for symptoms related to osteoporosis, there could be no resultant continuous treatment tolling the statute of limitations (see Nykorchuck v Henriques, 78 NY2d at 259). Instead, the plaintiff complained of and sought treatment for a variety of menopausal conditions. She received diagnoses for these menopausal conditions, for which Gewirtz provided vigorous and substantive treatments, including surgery.
Despite the total lack of evidence in her medical records noting any symptoms of, or a course of treatment for, osteoporosis, the plaintiff, who did not submit any additional medical [*3]records documenting her treatment with Gewirtz, contends that Gewirtz's diagnoses of other conditions, including atrophic vaginitis and postmenopausal bleeding, indicated that Gewirtz should have ordered a bone density test for the plaintiff. The plaintiff claims the results of this test would have led to a diagnosis of osteoporosis. However, the record is devoid of any medical evidence that supports a causal or correlative link between a diagnosis of atrophic vaginitis, postmenopausual bleeding, and osteoporosis (see Smith v Cooper, 172 AD3d at 778).
In this respect, the plaintiff and our dissenting colleague erroneously rely on two pages of the plaintiff's medical records dated January 3, 2013, and March 5, 2013, both of which are entitled "SONO/BONE DENSITY PROGRESS NOTE" (hereinafter progress note). Each progress note contains a section that addresses, in preprinted fashion, a "Sono" (i.e., sonogram) test and "Bone Density" test. On these broad and generalized forms, listed next to the option for "Bone Density" are 15 separate conditions, including osteoporosis, osteopenia, postmenopausal bleed, and postmenopausal atrophic vaginitis. According to the plaintiff, the fact that these conditions are listed together next to "Bone Density" on these preprinted forms, which were utilized by Gewirtz during regular office visits, establishes that those conditions are related. However, this assertion is not supported by any competent medical evidence in the record. Thus, it is entirely speculative to conclude that the mere listing of conditions on a preprinted form establishes a causal or correlative connection between them (see Young v New York City Health & Hosps. Corp., 91 NY2d 291; Nykorchuck v Henriques, 78 NY2d at 258-259; Smith v Cooper, 172 AD3d at 778).
The plaintiff also contends, and our dissenting colleague concludes, that the plaintiff's medical records show that during the relevant time period, the defendants treated and monitored the plaintiff's bone health. However, the plaintiff's medical records reflect no such treatment or monitoring.
For instance, the medical forms dated September 2, 2009, October 21, 2010, February 27, 2012, and March 29, 2013, contain a section at the top of the form listing, among other things, "Last colonoscopy," "LastPap," "HPV," "Last Mamo," "Last Sono," "Bone Density," and "Gardasil," with a line next to each for the entry of handwritten notes. On the forms dated October 21, 2010, February 27, 2012, and March 29, 2013, the word "no" or a symbol indicating "no" is handwritten next to "Bone Density." On the form dated September 2, 2009, a check mark is handwritten next to "Bone Density"; however, neither the form nor any other medical record submitted indicates that a bone density test was ordered on this date. Moreover, in her affidavit submitted in opposition to the defendants' motion, the plaintiff averred that a bone density test was never ordered at the September 2, 2009 visit, or at any other visit. These forms, which were utilized during the plaintiff's visits to the defendants' office, demonstrate a lack of any documented complaints of, or treatment or testing for, osteoporosis. They failed to raise a question of fact as to whether the defendants were treating or monitoring the plaintiff's bone health (see Young v New York City Health & Hosps. Corp., 91 NY2d 291; Smith v Cooper, 172 AD3d at 778).
Additionally, the minimal references in the medical records to the nonprescriptive supplements of vitamin D and calcium failed to establish a course of treatment with respect to the plaintiff's later-diagnosed osteoporosis (see Nykorchuck v Henriques, 78 NY2d at 259; Smith v Cooper, 172 AD3d at 778; Cole v Richard G. Karanfilian, M.D., P.C., 117 AD3d 670). There is nothing in the record to compel the conclusion that vitamin D and calcium supplements, which are widely used and prescribed over-the-counter, may only be recommended to address a person's bone health.
The plaintiff's and our dissenting colleague's reliance on a single lab requisition form dated October 21, 2010, is misplaced. That form contains check boxes for more than 60 lab tests, 4 of which are checked off. A separate section at the bottom of the form lists approximately 50 health conditions and their respective diagnostic codes. In a third section, the word "Diagnosis" is preprinted, with four blank lines underneath it. Handwritten on the first of those lines is the diagnostic code "733.01," which corresponds to the diagnostic code for osteoporosis listed on the bottom of the form. Additionally, a second handwritten diagnostic code, "244.8," is listed under the handwritten code for osteoporosis; however, the second code does not correspond to any of the [*4]diagnostic codes listed at the bottom of the form. It is purely speculative to elevate this single lab requisition form into a question of fact as to whether the plaintiff ever complained of any symptoms of, or received treatment for any symptoms related to, osteoporosis (see Nykorchuck v Henriques, 78 NY2d at 259; Smith v Cooper, 172 AD3d at 778). Nor was any competent medical evidence provided that would offer any different interpretation.
Additionally, our dissenting colleague erroneously relies on a preprinted questionnaire completed by the plaintiff on February 22, 2014, while under the care of a subsequent treating physician. The questionnaire, which was completed approximately 10½ months after April 9, 2013 (i.e., the applicable date for statute of limitations purposes), is irrelevant to the question of whether the statute of limitations should be tolled pursuant to the continuous treatment doctrine. In any event, the questionnaire fails to address the issue of whether, during her treatment with Gewirtz, the plaintiff ever complained of any symptoms of, or received treatment for any symptoms related to, osteoporosis.
Similarly, our dissenting colleague's reliance on portions of two forms in the plaintiff's medical records, which reference the plaintiff's family medical history, is misplaced. The first form, dated December 2, 2009, under the heading "FAMILY HISTORY," lists 10 separate conditions: "Diabetes," "Heart Disease," "Ovarian Cancer," "Breast Cancer," "Uterine Cancer," "colon polyps," "Colon cancer," "Cervical Cancer," "Osteoporosis," and "Alzheimers." Next to each listed condition is a "Y" and "N," with corresponding blank spaces for a check mark next to each. The second form, dated February 27, 2012, which is substantially similar to the first form, lists 12 separate conditions: those previously listed conditions, plus "Blood Clots DVT" and "Strokes."
Notably, the plaintiff has not relied on these portions of the medical records, either in the Supreme Court or on this appeal. More importantly, on both forms there is a check mark next to "N" for osteoporosis. Regardless, to suggest that the mere questioning of a patient about his or her family history for a wide array of conditions creates a course of treatment for one of those conditions would eviscerate the continuous treatment doctrine (see Massie v Crawford, 78 NY2d 516, 519).
Lewis v Rutkovsky (153 AD3d 450), cited by our dissenting colleague, is inapposite to this case. In Lewis, the plaintiff commenced an action against, among others, the defendant Frederick D. Rutkovsky, M.D., the plaintiff's primary care physician, by a complaint dated March 5, 2010. The plaintiff alleged that from on or about April 3, 1998, until September 5, 2007, Rutkovsky failed to diagnose her with a meningioma, a tumor that forms on the membranes surrounding the brain. The plaintiff asserted that Rutkovsky "'ignored' her repeated complaints of migraine headaches" (id. at 451). The Appellate Division, First Department, determined that "the record contains issues of fact as to whether from March 1999 until at least September 5, 2007, there was continuity of treatment for symptoms—namely, recurring and sometimes severe headaches—that were traceable to plaintiff's meningioma" (id. at 454). Unlike in Lewis, however, the plaintiff in this case never complained of any symptoms of osteoporosis during her course of treatment with Gewirtz.
Moreover, the cases relied upon by the plaintiff are inapposite. In each of those cases, there was evidence that the plaintiff received treatment for symptoms of the condition with which the plaintiff was later diagnosed (see Cohen v Gold, 165 AD3d at 882 [issue of fact as to whether a course of treatment for periodontal disease was established where the plaintiff, "between 2009 and 2015, . . . was treated continuously for symptoms ultimately traced to abnormal and severe periodontal disease"]; Javaid v Jajoo, 127 AD3d at 1028 [issue of fact as to whether a course a treatment for cardiovascular disease was established where, "during the relevant period, [the defendant doctor] continued to prescribe the injured plaintiff cardiovascular medications and issued charge slips for his visits with diagnostic codes for coronary atherosclerosis"]; Couch v County of Suffolk, 296 AD2d at 196 [issue of fact as to whether a course a treatment for a rash could act to toll the statute of limitations where the plaintiff was later diagnosed with Lyme disease]; Hill v Manhattan W. Med. Group—H.I.P, 242 AD2d 255). Here, however, no such evidence exists.
Finally, the plaintiff's contention that "the mere status of having menopausal symptoms" demonstrates a question of fact as to whether her treatment with Gewirtz referenced and/or sought to address osteoporosis is without merit (see Massie v Crawford, 78 NY2d at 519). "The toll of the continuous treatment doctrine was created to enforce the view that a patient should not be required to interrupt corrective medical treatment by a physician and undermine the continuing trust in the physician-patient relationship in order to ensure the timeliness of a medical malpractice action or notice of claim" (Young v New York City Health & Hosps. Corp., 91 NY2d at 296). Here, the sole medical reference submitted by the plaintiff was an article entitled "Postmenopaual Syndrome," which was published in the Indian Journal of Psychiatry in 2015. The article acknowledges that "aging and menopause are inextricably linked," and that "[p]rincipal health concerns of menopausal women include vasomotor symptoms, urogenital atrophy, osteoporosis, cardiovascular disease, cancer, psychiatric symptoms, cognitive decline, and sexual problems."
Accepting the plaintiff's expansive view that the mere status of receiving treatment for menopausal symptoms necessarily encompasses all conditions related to menopause and aging, would undermine the sound policy reasons behind the continuous treatment doctrine (see id.; Massie v Crawford, 78 NY2d at 519). Such a result is contrary to the foundational policy reasons for creating the continuous treatment doctrine, and could result in expanding it to virtually all the medical care a patient receives (see Young v New York City Health & Hosps. Corp., 91 NY2d at 296; Massie v Crawford, 78 NY2d at 519).
Accordingly, the Supreme Court properly granted the defendants' motion pursuant to CPLR 3211(a)(5) to dismiss, as time-barred, so much of the complaint as was based upon alleged acts of medical malpractice occurring prior to April 9, 2013, insofar as asserted against them.
DILLON, J.P., BRATHWAITE NELSON and ROMAN, JJ., concur.
DUFFY, J., dissents, and votes to reverse the order, on the law, and deny the motion of the defendants Ilene Gewirtz, Ilene Gewirtz, GYN, P.C., and A Woman's Way Practice of Gynecology pursuant to CPLR 3211(a)(5) to dismiss, as time-barred, so much of the complaint as was based upon alleged acts of medical malpractice occurring prior to April 9, 2013, insofar as asserted against them, with the following memorandum:
For the reasons that follow, I disagree with the majority's affirmance of the order dated September 10, 2019 (hereinafter the September 2019 order), which granted the motion of the defendants Ilene Gewirtz, Ilene Gewirtz, GYN, P.C., and A Woman's Way Practice of Gynecology (hereinafter collectively the defendants) pursuant to CPLR 3211(a)(5) to dismiss, as time-barred, so much of the complaint as was based upon alleged acts of medical malpractice that occurred prior to April 9, 2013, insofar as asserted against them. At this stage of the litigation, when there has been no discovery or depositions taken, I submit that the plaintiff still was able to point to documents in the records submitted by the defendants that raise questions of fact regarding the application of the continuous treatment doctrine such that the defendants' motion to dismiss should be denied.
In October 2015, the plaintiff commenced this action against, among others, the defendants, inter alia, to recover damages for medical malpractice. The plaintiff alleged, inter alia, that, between September 2009 and April 2013, she was treated by the defendants for peri- and postmenopausal syndrome and related conditions, and for general gynecological care. The plaintiff alleged, inter alia, that the defendants committed medical malpractice by failing to timely diagnose and treat her for osteoporosis; failing to appreciate the standard of care of her postmenopausal status and thereby failing to timely perform, inter alia, bone density tests and negligently delaying the performance of any treatment measures to prevent the progression of osteoporosis; and failing to properly record the plaintiff's medical history, including, inter alia, that the plaintiff was taking vitamin D supplements and/or was advised by the defendants to take such vitamin D supplements. The plaintiff alleged, inter alia, that, in February 2014, a different gynecologist diagnosed the plaintiff with, among other things, osteoporosis of the spine and osteopenia in both of her femurs. As amplified by the bill of particulars, the plaintiff contends that the defendants were negligent, inter alia, by failing to timely order that the plaintiff undergo a bone density test.
Before discovery, the defendants moved pursuant to CPLR 3211(a)(5) to dismiss, as time-barred, so much of the complaint as was based upon alleged acts of medical malpractice occurring prior to April 9, 2013, insofar as asserted against them. In support of their motion, the defendants submitted, inter alia, medical records of the plaintiff which they created. The plaintiff opposed the motion. In the September 2019 order, the Supreme Court granted the defendants' motion. The plaintiff appeals.
"'In moving to dismiss a cause of action pursuant to CPLR 3211(a)(5) as barred by the applicable statute of limitations, the moving defendant bears the initial burden of demonstrating, prima facie, that the time within which to commence the cause of action has expired. The burden then shifts to the plaintiff to raise a question of fact as to whether the statute of limitations is tolled or is otherwise inapplicable'" (Schrull v Weis, 166 AD3d 829, 831, quoting Stein Indus., Inc. v Certilman Balin Adler & Hyman, LLP, 149 AD3d 788, 789).
A medical malpractice action must be commenced within two years and six months after the date of the alleged malpractice (see CPLR 214-a; Massie v Crawford, 78 NY2d 516, 519). "The statute is tolled until after a plaintiff's last treatment, however, 'when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint'" (Massie v Crawford, 78 NY2d at 519, quoting McDermott v Torre, 56 NY2d 399, 405 [internal quotation marks omitted]). "'Under the continuous treatment doctrine, the limitations period does not begin to run until the end of the course of treatment if three conditions are met: (1) the patient continued to seek, and in fact obtained, an actual course of treatment from the defendant physician during the relevant period; (2) the course of treatment was for the same conditions or complaints underlying the plaintiff's medical malpractice claim; and (3) the treatment is continuous'" (Wright v Southampton Hosp., 187 AD3d 1242, 1244, quoting Mello v Long Is. Vitreo-Retinal Consultant, P.C., 172 AD3d 849, 850).
"The critical inquiry is not whether the defendant failed to make a diagnosis or undertake a course of treatment during the period of limitation, but whether the plaintiff continued to seek treatment for the same or related conditions giving rise to his or her claim of malpractice, during that period" (Cohen v Gold, 165 AD3d 879, 882). Accordingly, a defendant cannot prevent the application of the continuous treatment doctrine merely because of a failure to make a correct diagnosis as to the underlying condition, if the defendant treated the plaintiff continuously for the same or related conditions over the relevant time period (see e.g. id. at 882).
Here, the defendants demonstrated, prima facie, that, since this action was commenced more than 2½ years after the alleged acts of malpractice that occurred prior to April 9, 2013, so much of the complaint as was based upon alleged acts of medical malpractice that occurred prior to that date should be time-barred (see CPLR 214-a; Cohen v Gold, 165 AD3d at 881). However, I submit that, contrary to the conclusion of my colleagues in the majority, the record demonstrates that the plaintiff raised a question of fact as to whether the statute of limitations was tolled by the continuous treatment doctrine (see Cohen v Gold, 165 AD3d at 881-882; Lewis v Rutkovsky, 153 AD3d 450, 454). In opposition, the plaintiff relied upon, among other things, the medical records created by the defendants, which show, inter alia, that, during the relevant period, the defendants assessed, treated, and monitored the plaintiff's bone health. The records demonstrate that the defendants documented that the plaintiff had been advised to take vitamin D and Caltrate, supplements for bone health; monitored whether the plaintiff had had a bone density test; recorded the plaintiff's family history with respect to osteoporosis; issued a laboratory requisition slip to determine the plaintiff's level of vitamin D in the blood; listed osteoporosis on the laboratory requisition slip as a diagnosis; and also diagnosed the plaintiff with several conditions related to osteoporosis, specifically, menopausal symptoms, postmenopausal atrophic vaginitis, and postmenopausal bleeding (see e.g. Javaid v Jajoo, 127 AD3d 1027, 1028; Couch v County of Suffolk, 296 AD2d 194, 196). According to the defendants' own medical records for the plaintiff, the diagnosis of these conditions by the defendants indicated that the defendants should have ordered a bone density test for the plaintiff during the time she was their patient.
Moreover, at the plaintiff's first visit, the defendants' medical record notes that the [*5]plaintiff had a bone density exam, even though the plaintiff contends that she never had one, and her family history with respect to osteoporosis was noted. Thereafter, subsequent medical records on October 21, 2010, February 27, 2012, and March 29, 2013, each of which contains the word "no" or a symbol indicating "no" in the line next to "Bone Density," reveal that the plaintiff's bone health was being monitored together with her complaints of menopausal syndrome. This record, read in the light most favorable to the plaintiff, presents questions of fact as to whether the plaintiff's visits to the defendants during the relevant time period were part of a continuous monitoring and treatment for bone health, and whether certain related medical conditions of the plaintiff diagnosed by the defendants during the relevant time period should have alerted the defendants to order a bone density scan to assess for osteoporosis (see e.g. Schrank v Lederman, 52 AD3d 494, 496).
Significantly, the plaintiff also submitted her medical records created by her subsequent gynecologist, which documented in a bone density questionnaire that she was postmenopausal. This medical document of the plaintiff indicates that being postmenopausal is a "risk factor" for osteoporosis. Notably, in order to reach the conclusion that there is no question of fact as to the applicability of the continuous treatment doctrine, the majority relies on certain medical records created by and submitted by the defendants, yet discounts the relevance of this document submitted by the plaintiff.
Although my colleagues in the majority rely on the defendants' submissions, they contend that it is "erroneous[ ]" to rely on two of those documents, discounting the evidentiary value of those documents—created and submitted by the defendants themselves—as "preprinted." Those two documents set forth, in relevant part: "SONO/BONE DENSITY PROGRESS NOTE Dr. Ilene Gewirtz . . . ___ Bone Density: (Circle DX) Ongoing Drug Therapy for bone loss (V58.69)/ Completed Drug Therapy for osteoporosis (V67.51)/Long Term Steroid Use (V58.65)/ Osteoporosis (733.00)/Osteopenia (733.90)/ Status post Oophorectomy (V45.77)/ Glucocorticoid Therapy (V58.65)/ Hyperparathyroidism (252.01)/Postablative Ovarian Failure (256.2)/ Premature Menopause (256.31)/Ovarian Failure (256.39), Premenopausal Menorrahagia (627.0)/ Postmenopausal Bleed (627.1)/ Menopausal Symptoms (627.2)/ Postmenopausal Atrophic Vaginitis (627.4)/ Fracture of __________ /Height loss/ Poor calcium intake." These documents indicate that menopausal symptoms, postmenopausal atrophic vaginitis, and postmenopausal bleeding are all risk factors for osteoporosis. The majority suggests, without support in the record, that the document is not a medical record and that it does not contain medical information upon which the plaintiff can rely. In fact, these two documents, which were created by the defendants (together with the document created by the plaintiff's subsequent gynecologist), are evidence that postmenopausal symptoms and conditions are related to the development of osteoporosis and the existence or absence of which is part of the assessment to determine when a patient should have a bone density test.
At this stage of the litigation, the majority's dismissive treatment of these documents as "preprinted" and finding that "it is entirely speculative to conclude that the mere listing of conditions . . . establishes a causal or correlative connection between them" holds the plaintiff to a more demanding standard than is required to successfully oppose the defendants' motion (see id. at 496). These documents, read in the light most favorable to the plaintiff, are sufficient to raise a question of fact, which is all that the law requires at this stage (see id.).
The Supreme Court's determination, endorsed by my colleagues in the majority, that the records submitted by the defendants never reference or address osteoporosis is, in fact, belied by those medical records created and submitted by the defendants, which document, inter alia, that, during the relevant period, the defendants assessed, treated, and monitored the plaintiff's bone health, despite their failure to order a bone density test.
In sum, the majority's characterization of certain of the defendants' own documents fails to afford the plaintiff the favorable view through which the documents should be read (see e.g. id.). Moreover, no discovery has been conducted yet, and "[t]he resolution of the continuous treatment issue . . . should abide relevant discovery" (id.).
Accordingly, since the plaintiff's medical records raise a question of fact as to [*6]whether the continuous treatment doctrine applies to toll the statute of limitations, the Supreme Court should have denied the defendants' motion pursuant to CPLR 3211(a)(5) to dismiss, as time-barred, so much of the complaint as was based upon alleged acts of medical malpractice that occurred prior to April 9, 2013, insofar as asserted against them.
ENTER:
Maria T. Fasulo
Clerk of the Court